Huitín, Judge
I do not question the proposition laid down, that a debtor may, in the absence of his creditor, execute a bond in his favor, or a deed by way of a security for a debt due by bond or otherwise, and that such bend or deed, if made with an honest purpose, will be effectual when assented to by the creditor, and that such an assent is to be presumed. Yet it is a suspicious *147 circumstance, that the deed should be made of all the property, on the debtor’s own motion, without being at all sought by the creditor, to secure a particular debt. But I more than question, whether such an instrument, when kept by the party making it. and subsequently delivered, has relation for any purpose beyond the actual delivery. But I do not think it necessary to discuss that, because I conceive the deed to be plainly fraudulent, in a point of view not explained to the jury ; for which I think there must bo a new trial.
It seems, that a bond, which is retained !,y the obligee and subsequently delivered, does not relate beyond tire actual delivery.
Where the fraudulent intent is made to appear by evidence extrinsic of the deed, it is a question ior idle jury. But what is a fraudulent intent is a question of law.
The whole controversy, as appears from tbe case, turns upon the question of fraud. Now I do not question the power, nor the sole power of the jury to find tbe intent, when it is to he made to appear by matter extrinsic of the deed. But what intent is in law fraudulent, the court must inform the jury,else the law can have no rule upon the doctrine of fraud ; and every case must create its own law. I think here is a plain fraud. The deed was not made to secure a debt. I mean, that was not the design of it. The debt was created, that is, the responsibility for which the deed is declared to be an indemnity, for the sake of a pretence for making the deed, and thereby securing the use and possession of the property to the debtor.
There are various species and various evidences of fraud. A common instance is, where the debt is not a true one — of which the strongest evidence is tbe possession unreasonably remaining with the pretended debtor. Another instance is, where the debt is a true one, but the possession is left so as to give the debtor a delusive credit, and enable him to cheat honest men. And in every case, where it is made manifestly to appear, that notwithstanding the deed, the debtor is to have the real use, as it wei*e, the beneficial ownership of the property, it is a presumption of law, to be delivered to the jury, that the deed is fraudulent. This is founded upon both tbe foregoing principles combined. It is on the one hand evidence, that the consideration is feigned; and on the other, that it was designed by both parties to hold out to the world a false appearance as to tbe circumstances of the *148 debtor, and thus entrap subsequent creditors, as well as deceive prior ones. These inferences from possession are certainly open to explanation, and are to be drawn ]3y the jury. But the tendency of the evidence and the grounds of the inferences arc proper subjects for observation from the bench. There is however another princir pie equally important, which is also connected with this subject. The law intends, that no man shall contract a! debt, which he does not mean to pay ; and will not uphold any means taken to enable or'encourage him to do so. If therefore, as is mentioned in Twine's case, a conveyance |,e taken for a true debt, upon the understanding that the debtor is to have the use of the property ; that although it is apparently conveyed in satisfaction or se- , . . , , currty for it, yet the beneficial ownership is to be with ^ debtoi", it is void. Why ? Because it is taken, that . . ' , . m truth, it was not taken for the very purpose oí satisfy-jns- the debt, but under the cover thereof, for the ease and ° ,, •’ favor of the debtor, either generally or lor some definite time. What temptations would it not hold out to dishonest men to run up scores, without the smallest intention of making payment, if by finding a friend amongst their creditors, they could enjoy their property all their lives against the other creditors. It must be made men’s interest not to be dishonest in contracting a debt, more than in putting away their property from all their creditors; And the only way to do that is by saying, that if it appear that the conveyance was truly made, not for the creditor’s benefit, but for the debtor’s, it is void. It is true, that where the debt is a just one, the covenous intent is difficult of proof, and can seldom be proved; becausepri-ma facie a just debt makes the deed bona fide. Nevertheless, where the intent can be reached, it is not the less fraudulent, indeed has more moral depravity, because it assumes a more specious appearance.
A deed made debt, but for the real purpose of enablmg the debtor to continue in the use & enjoymentofthe property conveyed, is fraudulent and void.
This is a case, in which I think it is reached and plainly exhibited. The debtor wished expressly to evade the payment of Harris' debt. To effect it, he had endeavored to make a conveyance of all his property to his father,, which the latter refused, though he wished a security upon *149 what he deemed enough. In "the father’s absence, and without his privity, he does not make a deed to secure the payment to his father, but gets two other men to join mm m a bond to the father, and then conveys to i ndemnify them. Why should they volunteer this liability ? They knew the debtor’s insolvency, and had taken a deed for the land in part payment of their debt. Only the small balance of g50 remained due to them. Why did they not secure that on part of the property ? Because it would not answer the purpose. The object was to cover all; and to enable them to do so with some color, they execute the bond, leave it with the debtor, and take a deed for every thing to pay the g 50, and repay them what they should pay to the father. That the bond was made with this view is further to be inferred, because there had been no settlement with the father, and the debt was assumed at aventure for the occasion. Were this bond and deed made for the security of the creditor, (the father, ) or were they executed for the different purpose of shielding the debtor from the assaults of other creditors, and retaining his effects, his household stuff and provisions on baud, and growing crops, to the use and ease of the debtor himself, or to use his own words, to save his property ? All may judge, and few can he deceived I think. For the purposes of this life, the debtor is as well off as if the property were his own, and ho owed not a cent, supposing the deed could be made with this intent, and could be supported; yet as to his creditors he is not worth a cent, and they are defied.
I do not say, that the court ought to have instructed the jury, that such conclusions of fact were drawn by the law. Far from it. But I think they ought to have been informed, that they might be made from the evidence, if believed; and submitting the case to them on that point, to have been told, that if they found the bond and deed were made with that intent, the latter was void. The instruction would then have been given on the gist of the controversy. As the case was not so presented to the jury, Í think there ought to be a new trial, that it muy be.
Per Curiam. — Jubgment rjeyersjjtk